UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| WRR ENVIRONMENTAL SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ADMIRAL INSURANCE COMPANY, <br><br> Defendant. | Case No. 10-C-843 |

**WRR ENVIRONMENTAL SERVICES, INC.'S BRIEF IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE ISSUE WHETHER THE ALLEGED "ABSOLUTE POLUTION EXCLUSION" BARS WRR ENVIRONMENTAL SERVICES, INC.'S INSURANCE CLAIM**

WRR Environmental Services, Inc. ("WRR") purchased an insurance policy from Admiral Insurance Company ("Admiral") in 1983. One of WRR's primary purposes in purchasing the policy was to comply with Unites States Environmental Protection Agency ("EPA") regulations that required hazardous waste facilities to maintain pollution insurance to demonstrate financial responsibility for events that would require clean up and remediation. Admiral knew of this purpose. Nevertheless, Admiral purported to insert into the policy an endorsement excluding pollution coverage. Simultaneously, one of the insurance intermediaries that sold the policy on Admiral's behalf certified to WRR that the policy covered sudden accidental occurrences and satisfied the EPA financial responsibility regulations. Admiral now attempts to distance itself from the conduct and representations of its agents. Wisconsin insurance statutes prohibit Admiral from doing so: the conduct of Admiral's agents is binding on

Admiral. Accordingly, the Court should hold, as a matter of law that the so-called "Absolute Pollution Exclusion" does not bar WRR's claims.[1]

## The Parties

On May 1, 1983, Defendant Admiral sold to Plaintiff WRR a general liability insurance policy. (Proposed Findings of Fact (hereinafter "PFF") ¶ 1, Answer, ¶ 8 (dkt. # 8)). Admiral accomplished the sale through use of two insurance intermediaries, John H. Crowther Inc. ("Crowther") and Stromwell, Joseph & Gustaveson, Inc. ("Gustaveson"). (PFF, ¶ 4; December 1, 2011 Declaration of Thomas A. Janczewski (hereinafter "Janczewski Decl."), ¶ 5, Ex. D, pp. 15-17). Crowther was an insurance wholesaler appointed by Admiral to deal on Admiral's behalf with local insurance agents. (PFF, ¶ 5; Janczewski Decl., ¶ 5, Ex. D, pp15-17). Gustaveson, in turn, was an insurance agent that Crowther worked through to sell the Policy to WRR. (PFF, ¶ 6; Janczewski Decl., ¶ 5, Ex. D, pg. 17). For its part, Gustaveson held itself out to WRR to be an "Authorized Representative of Admiral Insurance Company." (PFF, ¶ 7; Janczewski Decl., ¶ 2, Ex. A, pg. ADM000045).

## EPA Financial Responsibility Regulations

WRR is and at all relevant times operated a hazardous waste facility as that term is defined under federal law. Federal law further required WRR to demonstrate financial responsibility to operate a hazardous waste facility with respect to their ability to pay for any damages that might arise from its operations. 47 Fed. Reg. 16544, 16544 (Apr. 16, 1982). Specifically, a hazardous waste facility "must demonstrate financial responsibility for bodily injury and property damage to third parties caused by sudden accidental occurrences arising from operations of the facility or group of facilities." 40 CFR § 264.147(a). The regulations

---

[1] Pursuant to the Court's scheduling Orders of January 11, 2011 and September 13, 2011, the parties were directed to conduct discovery on the application of the Absolute Pollution Exclusion, followed by motions for summary judgment on this potential dispositive issue.

2

Case 2:10-cv-00843-RTR   Filed 12/01/11   Page 2 of 12   Document 26

permitted hazardous waste facilities to demonstrate financial responsibility in one of three ways: (i) the hazardous waste facility could pass a financial test; (ii) the hazardous waste facility could demonstrate to the Regional Administrator of the United States Environmental Protection Agency ("EPA") that it had sufficient qualifying insurance and set forth by regulation; (iii) a combination of the first two. *Id.*

In order for insurance to count towards the financial responsibility requirements, the regulations required each hazardous waste facility to "amend[] by attachment of the Hazardous waste Facility Liability Endorsement or evidence[] by a Certificate of Liability Insurance." The regulations further proscribed a specific format for the endorsement or certificate which hazardous waste facilities and their insurers were required to follow word-for-word. Upon completion, the regulations required the hazardous waste facilities present the certificate to Regional Administrator of the EPA. These regulations took effect on July 15, 1982. 47 Fed. Reg. 16544, 16544 (Apr. 16, 1982).

## The Insurance Policy

WRR purchased general liability insurance policy number A3EG0772 from Admiral on May 1, 1983 (the "Policy") to satisfy WRR's obligations under the financial responsibility regulations. (PFF, ¶ 2; s*ee* Janczewski Decl., ¶ 2, Ex. A, pp. ADM000025, ADM000045). Indeed, in purchasing the Policy WRR specifically requested "pollution liability coverage." (PFF, ¶ 8; *see* Janczewski Decl., ¶ 2, Ex. A, pp. ADM000025, ADM000045). Although the underwriting file discloses that Admiral and Crowther internally discussed Admiral's unwillingness to sell WRR pollution coverage, nothing indicates that any party ever told WRR that the Policy would not cover pollution. (PFF, ¶ ¶ 9, 18; Janczewski Decl., ¶ 2, Ex. A, pg. ADM000029). Rather, the terms of the Policy itself states a limit of $500,000 for each

3

occurrence as respects Bodily Injury Liability or Property Damage Liability" and broadly defined "occurrence" as "an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage neither expected nor intended from the standpoint of the Insured." (PFF, ¶ 10; Janczewski Decl., ¶ 5, Ex. D, pg. 35, Ex. 2, pg. 000059-63).

### Admiral Attempts to Add the Absolute Pollution Exclusion One Month After the Effective Date of the Policy

However, one month after the effective date of the Policy, on June 1, 1983, Admiral purportedly sent to WRR a series of declarations and endorsements, including the so-called "absolute pollution exclusion" endorsement, alleged by Admiral to be included in the contract as endorsement number 5. (PFF, ¶ 11; Janczewski Decl., ¶ 2, Ex. A, pg. ADM000001, ADM000015). The "absolute pollution exclusion" endorsement states:

> It is hereby understood and agreed that this insurance does not apply to bodily injury or property damage arising out of the discharge, dispersal, release, or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any water course or body of water.

(PFF, ¶ 12; Janczewski Decl., ¶ 2, Ex. A, pg. ADM000015).

### Insurance Intermediary Gusteveson Sends to WRR a Hazardous Waste Facility Certificate of Liability Insurance

With the EPA financial responsibility regulations in mind, Gustaveson executed and delivered to WRR a "Hazardous Waste Facility Certificate of Liability Insurance" (the "Certificate") in the format required by regulation. (PFF, ¶ 13; Janczewski Decl., ¶ 2, Ex. A, pg. ADM000045). Indeed, Gusteveson certified that the wording was identical to the wording in 40 CFR 264.151(j). (PFF, ¶ 14; Janczewski Decl., ¶ 2, Ex. A, pg. ADM000045).

> "The coverage applies ... for 'sudden and accidental occurences.'"

HAZARDOUS WASTE FACILITY CERTIFICATE OF LIABILITY INSURANCE

1. Admiral Insurance Company, the "Insurer", of Cherry Hill, New Jersey hereby certifies that it has issued liability insurance covering bodily injury and property damage to Waste Research & Reclamation co., Inc., the "insured", of Route 7, Hwy 93 South, Eau Claire, WI in connection with insured's obligation to demonstrate financial responsibility under 40 CFR 264.147 or 265.147. <u>The coverage applies at WID 990829475 Waste Research & Reclamation Co., Inc., Route 7, Hwy 93 South, Eau Claire, WI for "sudden accidental occurrences."</u> The limits of liability are $500,000. each occurrence and $500,000. annual aggregate, exclusive of legal defense costs. The coverage is provided under policy number A3EG 0772, issued on June 1, 1983. The effective date of said policy is May 1, 1983.

2. The Insurer further certifies the following with respect to the insurance described in paragraph 1:
  (a) Bankruptcy or insolvency of the insured shall not relieve the Insurer of its obligations under the policy.
  (b) The Insurer is liable for the payment of amounts within any deductible applicable to the policy, with a right of reimbursement by the insured for any such payment made by the Insurer. This provision does not apply with respect to that amount of any deductible for which coverage is demonstrated as specified in 40CFR 264.147(f) or 265.147(f).
  (c) Whenever requested by a Regional Administrator of the U. S. Environmental Protection Agency (EPA), the Insurer agrees to furnish to the Regional Administrator a signed duplicate original of the policy and all endorsements.
  (d) Cancellation of the insurance, whether by the Insurer or the insured, will be effective only upon written notice and only after the expiration of sixty (60) days after a copy of such written notice is received by the Regional Administrator of the EPA Region in which the facility is located.
  (e) Any other termination of the insurance will be effective only upon written notice and only after the expiration of thirty (30) days after a copy of such written notice is received by the Regional Administrator of the EPA Region in which the facility is located.

I hereby certify that the wording of this instrument is identical to the wording specified in 40CFR 264.151(j) as such regulation was constituted on the date first above written, and that the Insurer is licensed to transact the business of insurance, or elegible to provide insurance as an excess or surplus lines insurer, in one or more States.

_J. C. Gustaveson_
Agency, Authorized Representative of Admiral Insurance Company
2645 Harlem St., P.O. Box 65, Eau Claire, WI 54702

RECEIVED JUL 1 1 1983 MADISON CROWTHER, INC

> J.C. Gustaveson... **Authorized Representative of Admiral Insurance Company**

(PFF, ¶ 13; Janczewski Decl., ¶ 2, Ex. A, pg. ADM000045).

Crowther and Admiral received a copy of the Certificate. (PFF, ¶ 17; Janczewski Decl., ¶ 2, Ex. A, pg. ADM000045; Janczewski Decl., ¶ 5, pg. ADM000045). Admiral stored the

Certificate in its underwriting file. (PFF, ¶ 18; Janczewski Decl., ¶ 5, Ex. D, pg. 44). There is no evidence that Crowther or Admiral ever disavowed the Certificate or advised WRR that Gustaveson was in any way unauthorized to bind Admiral. (PFF, ¶ 19). Both WRR and the EPA relied upon the Certificate: (PFF, ¶ 20; Janczewski Decl., ¶ 2, Ex. A, pg. ADM000018). WRR continued to pay premiums on the Policy and EPA accepted the Certificate as evidence of financial responsibility. (PFF, ¶ 20; Janczewski Decl., ¶ 2, Ex. A, pg. ADM000018). Indeed, Admiral did not advise WRR of Admiral's position that the certificate was erroneous until approximately 15 years later, in a coverage dispute before the Western District of Wisconsin (Case No. 98-C-0713S) that ultimately settled out of court. (PFF, ¶ 21; *see* Janczewski Decl., ¶ 4, Ex. C., Responses 1–3).

## Lake Calumet Cluster Site

On or around November 6, 2003, WRR received from EPA a notice indicating that WRR was a potentially responsible party ("PRP") for a site known as the "Lake Calumet Cluster Site." (PFF, ¶ 22; Janczewski Decl., ¶ 6, Ex. E ). WRR never owned or operated the Lake Calumet Cluster Site; rather the EPA takes the position that WRR is a PRP based upon WRR alleged transportation of materials to the Lake Calumet Cluster Site:

> The U.S. EPA has information that you may have owned or operated or generated or transported hazardous substances that were disposed of at the Site. By this letter, U.S. EPA notifies you of your potential liability with regard to this matter and encourages you, as a potentially responsible party, to reimburse U.S. EPA for costs incurred to date and to voluntarily perform or finance the response activities that U.S. EPA has determined or will determine are required at the Site.

(PFF, ¶ 23; Janczewski Decl., ¶ 6, Ex. E ).

On or around November 20, 2003, WRR sent Admiral a timely letter notifying Admiral of WRR's identification as a PRP and seeking defense and indemnification under the Policy.

6

(PFF, ¶ 24; Janczewski Decl., ¶ 6, Ex. E ).  To date, Admiral has denied coverage on the basis of the Absolute Pollution Exclusion.  (PFF, ¶ 25; Counterclaim, ¶ 5 (Dkt # 8)).

## LEGAL STANDARD

Rule 56(c) directs courts to grant a motion for summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  To withstand summary judgment the nonmoving party "must . . . set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e).  The nonmoving party "cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position."  *Tolle v. Carroll Touch*, 23 F.3d 174, 178 (7th Cir. 1994).  Additionally, courts "are not required to draw every conceivable inference from the record, and mere speculation or conjecture will not defeat a summary judgment motion." *McCoy v. Harrison*, 341 F.3d 600, 604 (7th Cir. 2003) (quotations omitted).

Even if some facts are in dispute, entry of summary judgment is in order if the movant either establishes uncontroverted facts entitling it to summary judgment or demonstrates the non-moving party has failed to make a sufficient showing on an essential element of its case with respect to which it will bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Where the non-moving party bears the burden of proof on a dispositive issue, the party also bears the burden of affirmatively demonstrating the existence of a genuine issue for trial on that issue.  *Roger v. Yellow Freight Sys.*, 21 F.3d 146, 148 (7th Cir. 1994).

In an insurance coverage dispute "[t]he insured has the initial burden to show coverage, while the insurer has the burden of proving any exception to coverage."  *Estate of Ermenc by Ermenc v. American Family Mut. Ins. Co.*, 221 Wis. 2d 478, 481, 585 N.W.2d 679 (Ct. App. 1998).

7

## ARGUMENT

### I. The Financial Responsibility Certificate Modified the Policy.

The language of the Financial Responsibility Certificate is clear and unambiguous. Admiral's representative represented to WRR and the EPA that the Policy provided pollution coverage as required by regulation. Under the governing statute in existence at the time:

> Every insurer is bound by any act of its agent performed in this state that is within the scope of the agent's apparent authority . . . .

Wis. Stat. § 628.40. Here, Gusteveson, under the auspices of being an authorized representative of Admiral, purported to bind Admiral to pollution coverage as required by the EPA financial responsibility regulations. As a matter of statutory law, Admiral is so bound.

### a. Even If Admiral Did not Enter a Formal Agency Contract, Gusteveson is at a Minimum an Apparent Agent of Admiral.

WRR anticipates that Admiral will attempt to argue that no actual agency relationship existed between Admiral and Gusteveson. However, even in the absence of an actual agency relationship, Wisconsin courts hold insurers to the principles of apparent agency. *Harris v. Knutson*, 151 N.W.2d 654, 35 Wis.2d 567 (1967).

> Three elements are necessary to establish apparent agency: (1) Acts by the agent or principal justifying belief in the agency. (2) Knowledge thereof by the party sought to be held ….(3) Reliance thereon by the plaintiff, consistent with ordinary care and prudence

*Id.* (quoting *Domasek v. Kluck,* 113 Wis. 336, 339, 89 N.W. 139(1902)). Here, all three elements are met. First, Gusteveson held himself out to be an "authorized agent of Admiral Insurance Company." (PFF, ¶ 16; Janczewski Decl., ¶ 2, Ex. A, pg. ADM000045). Second, this representation was known by Admiral and Admiral maintained copies of this representation in its underwriting file. (PFF, ¶ 18; Janczewski Decl., ¶ 5, Ex. D, pg. 44). Admiral remained silent.

(PFF, ¶ 19). Indeed, Admiral did not advise WRR for around 15 years of its position that the Policy did purportedly did not meet the requirements of the financial responsibility regulations. (PFF, ¶ 21; *see* Janczewski Decl., ¶ 4, Ex. C., Responses 1–3). Lastly, WRR relied upon this statement by paying Admiral insurance premiums based upon the representations made by Gusteveson, and Admiral accepted those premiums. (PFF, ¶ 20; Janczewski Decl., ¶ 2, Ex. A, pg. ADM000018). Accordingly, Gusteveson was the apparent agent of Admiral and his actions bound Admiral.

### b. As a Matter of Law, Admiral Cannot Deny that the Certificate Modified the Policy.

WRR anticipates that Admiral may try to argue that the "certificate" did not operate to amend the Policy because it was not formally entitled a "endorsement." Such an argument would place form over substance and the Court should reject it. The effect that the certificate had on WRR was to induce WRR to believe that WRR maintained pollution coverage with Admiral. This is enough.

Moreover, this Court should not permit Admiral to prevail under the theory that it in essence misled the EPA back in 1983. The principles of judicial estoppel prohibit this result. A court may invoke the doctrine of judicial estoppel when three elements exist: (1) the later position must be clearly inconsistent with the earlier position; (2) the facts at issue should be the same in both cases; and (3) the party to be estopped must have convinced the first court or administrative agency to adopt its position. *Salveson v. Douglas County*, 2001 WI 100, ¶ 38, 245 Wis. 2d 497, 630 N.W.2d 182. "'Judicial estoppel . . . does not require proof of privity, reliance, or prejudice." *State v. Fleming*, 181 Wis. 2d 546, 557, 510 N.W.2d 837 (Ct. App. 1993).

9
Case 2:10-cv-00843-RTR   Filed 12/01/11   Page 9 of 12   Document 26

Judicial estoppel applies to statements made to administrative agencies with the same force as if made before a court. *See Salverson*, 2001 WI 100 ¶¶ 35-41 (analyzing whether to apply doctrine of judicial estoppel to statements made to Department of Workforce Development, but determining that plaintiff had not taken clearly inconsistent positions*); see also Am. Mfr.S Mut. Ins. Co. v. Payton Lane Nursing Home Inc*, 704 F. Supp. 2d 177, 193 (E.D.N.Y. 2010) ("It is well established that the doctrine of judicial estoppel applies equally where the prior statements were made to administrative agencies, i.e., in administrative or quasi-judicial proceedings.").

As illustration, Courts have routinely applied the doctrine of judicial estoppel to prohibit litigant from opportunistically denying the sworn statement they have made on tax returns. *See, e.g., Mahoney-Buntzman v. Buntzman*, 12 N.Y.3d 415, 422, 881 N.Y.S.2d 369, 909 N.E.2d 62 (N.Y.2009) ("A party to a litigation may not take a position contrary to a position taken in an income tax return"); *PL Diamond LLC v. Becker-Paramount LLC*, 16 Misc.3d 1105(A), 841 N.Y.S.2d 828, 2007 WL 1865044, at *9 (N.Y.Sup.Ct., N.Y. County June 6, 2007); *Meyer v. Ins. Co. of Am.*, No. 97 CIV. 4678, 1998 WL 709854, at *11 (S.D.N.Y. Oct. 9, 1998) (plaintiff estopped from claiming, in court proceeding, entitlement to disability benefits for inability to work where she previously reported on income tax that she was employed full-time); *Estate of Ginor v. Landsberg*, 159 F.3d 1346, 1998 WL 514304, at *1 (2d Cir.1998) (party who obtained a tax deduction by representing to IRS on tax return that a wrap note was included in a partnership's property was estopped, in a subsequent litigation, from claiming that the note was not a genuine partnership obligation); *Zemel v. Horowitz*, 11 Misc.3d 1058(A), 815 N.Y.S.2d 496, 2006 WL 516798, at *6 (N.Y.Sup.Ct., N.Y. County Mar. 2, 2006) (plaintiffs estopped from

asserting, in court proceeding, that they sold securities for the purpose of loaning the proceeds to defendant when, on their tax returns, they reported that they short-sold the securities).

The statements made by Admiral, which Admiral knew or should have known would be sent to the EPA, are analogous to statement made on a tax return. Here, all three elements of judicial estoppel are met. Admiral took a position before a governmental agency regarding a fact at issue in this case, *i.e.*, that the Policy covered sudden accidental occurrences. The EPA apparently accepted the position. Now, Admiral tries to opportunistically deny that its statement to EPA was truthful. Admiral should be estopped from taking such a position.

## II. Even if the Certificate Did Not Modify the Policy, Wisconsin Law Requires that the Policy Be Reformed to Conform with WRR's Requirements as Stated to Admiral's Intermediaries.

The Wisconsin Supreme Court has adopted the rule set forth in Appleman on Insurance with respect to insurance contract reformation:

> Where a policy of insurance, which has been drawn up by the agent of the insurer and merely accepted by the insured, does not represent the intention of both parties, because of the fault or neglect of the agent, it may be reformed so as to express the contract it was intended should be made. Where the party applying for insurance states the facts to the agent and relies on him to write the policy, which will protect his interests, and the agent so understands, but fails by mistake to so write the contract, the mistake is considered mutual.

*Artmar, Inc. v. United Fire & Cas. Co.*, 34 Wis.2d 181, 644, 148 N.W.2d 641 (1967)(quoting 13 Appleman, Insurance, p. 368, § 7609). This rule "recognizes the reliance which most people place upon an insurance agent to protect their interests." *Id.* Accordingly, "[a] mistake due to the negligence of an agent. . .is satisfactory ground for reformation, since the insured ordinarily relies upon the agent to set out properly the facts in the application." *Vandenberg v. Continental Ins. Co.*, 2001 WI 85, ¶ 54, 244 Wis. 2d 802, 628 N.W.2d 876 (2001)(quoting *Artmar*, 34 Wis. 2d. at 187). In this case, Crowther and Gusteveson clearly understood WRR's need for pollution

coverage as demonstrated by the underwriting file produced by Admiral. Moreover, the Certificate further corroborates this understanding. Accordingly, under *Artmar* and *Vandenberg*, WRR is entitled to reformation of the Policy to eliminate the Absolute Pollution Exclusion. In the absence of the Absolute Pollution Exclusion, Admiral owes coverage to WRR. *See Johnson Controls v. Employers Ins. of Wausau*, 2003 WI 108, 264 Wis. 2d 60, 665 N.W.2d 257 (cost of environmental clean-up covered by General Comprehensive Liability insurance polices).

## CONCLUSION

For the forgoing reasons the Court should grant partial summary judgment in favor of WRR that the Absolute Pollution Exclusion does not bar WRR's claims.

Dated: December 1, 2011          **MICHAEL BEST & FRIEDRICH LLP**

By: s/ Thomas A. Janczewski
    Raymond R. Krueger (SBN 1000642)
    Thomas A. Janczewski (SBN 1066346)
    Michelle M. Wagner (SBN 1076065)
    100 East Wisconsin Avenue, Suite 3300
    Milwaukee, WI 53202-4108
    Phone: (414) 271-6560
    Fax: (414) 277-0656
    E-mail: rrkrueger@michaelbest.com
           tajanczewski@michaelbest.com

*Attorneys for Plaintiff WRR Environmental Services, Inc.*

094296-0012\10529799.3