# In the Matter Of:

## WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

10-C-843

## ROBERT THOMAS FULLER

*October 03, 2013*

DEFENDANT'S
EXHIBIT



800.211.DEPO (3376)
EsquireSolutions.com

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
1–4

## Page 1

```
1        IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF WISCONSIN
2              · MILWAUKEE DIVISION

3
  WRR ENVIRONMENTAL SERVICES, INC.,
4
          Plaintiff,
5
  Vs.                        Case No. 10-C-843
6
7 ADMIRAL INSURANCE COMPANY,

8          Defendant.

9
   _____
10
        THE DEPOSITION OF ROBERT THOMAS FULLER
11
              OCTOBER 3, 2013
12
   _____
13
```

## Page 2

```
1              The 30(b)(6) deposition of
2  ROBERT THOMAS FULLER, taken on behalf of the
3  Defendant, pursuant to Notice, on this, the
4  3rd day of October, 2013, beginning at
5  approximately 10 a.m., in the law offices of
6  Hurtado, S.C., 10700 Research Drive, Suite
7  Four, Wauwatosa, Wisconsin.
8              This deposition is taken in
9  accordance with the terms and provisions of
10 the Federal Rules of Civil Procedure.
11             The signature of the witness is
12 waived.
```

## Page 3

```
1              - APPEARANCES -

2  For the Plaintiff:

3         MR. THOMAS A. JANCZEWSKI
          Attorney at Law
4         Michael Best & Friedrich LLP
          100 East Wisconsin Avenue
5         Suite 3300
          Milwaukee, WI  53202
6         (414) 271-6560
          tajanczewski@michaelbest.com
7
8
9
10 For the Defendant:

11        MS. JEANNE M. HOFFMANN
          Attorney at Law
12        Bryce Downey & Lenkov LLC
          200 North LaSalle Street
13        Suite 2700
          Chicago, IL  60601
14        (312) 377-1501
          jhoffmann@bdlfirm.com
15
16        MR. BRIAN R. ZIMMERMAN
          Attorney at Law
17        Hurtado, S.C.
          10700 Research Drive
18        Suite Four
          Wauwatosa, WI  53226
19        (414) 727-6250
          bzimmerman@hurtadosc.com
20
21
22
23 Reported by:

24        MS. SARA R. ROGAN
25
```

## Page 4

```
1              - INDEX -

2  WITNESS:                    PAGE NUMBER

3
     ROBERT THOMAS FULLER
4
5    Examination
     By MS. HOFFMANN  ----------------  5
6
7
8
9  FULLER DEPOSITION EXHIBITS      PAGE

10 Exhibit 1  (Amended Notice of Deposition)  7
   Exhibit 2  (Feb. 1, 2006 Letter)--------- 19
11 Exhibit 3  (Feb. 8, 2006 Letter)--------- 19
   Exhibit 4  (Dec. 16, 2008 Letter)-------- 19
12
   Exhibit 5  (**Reporter's Note: By agreement,
13             Exhibit 5 has been placed
              under seal)--------------- 28
14
   Exhibit 6  (March 7, 2013 Letter)-------- 41
15
```

Page 5

1           ROBERT THOMAS FULLER,
2   having been first duly sworn, was examined
3   and testified as follows:
4           EXAMINATION
5   BY MS. HOFFMANN:
6   Q.      For the record, this is the Federal
7   Rules of Civil Procedure 30(b)(6) deposition
8   of the plaintiff, WRR Environmental Services,
9   Inc. Can you state your name for the record,
10  sir?
11  A.      Robert Thomas Fuller.
12  Q.      Mr. Fuller, have you ever given your
13  deposition before?
14  A.      Yes.
15  Q.      How many times?
16  A.      Twice.
17  Q.      When was the last time you were
18  deposed?
19  A.      Approximately a year ago.
20  Q.      And what type of matter did that
21  deposition relate to?
22  A.      A lawsuit for a claim on insured
23  product that ruined our plant.
24  Q.      Was it a matter relating to insurance
25  coverage?

Page 6

1   A.      Yes.
2   Q.      And what about the other time, the
3   second time you were deposed?
4   A.      That was a long time ago for another
5   company having to do with a liability claim.
6   Q.      So did that relate to insurance
7   coverage also?
8   A.      It might have been a civil matter.
9   I'm not sure.
10  Q.      So you've given your deposition a few
11  times before, but just as a reminder, I'll
12  repeat a few of the rules of the deposition.
13          I'm going to be asking you a number
14  of questions. I represent Admiral Insurance
15  Company in the lawsuit WRR Environmental
16  Services versus Admiral Insurance Company.
17  I'm going to be asking you a number of
18  questions. For purposes of keeping the
19  record clear and not giving the court
20  reporter a hard time, please wait until I
21  finish asking the question before you
22  respond; otherwise, things get jumbled on the
23  record. And if I ask a question, if you
24  don't understand the question, please let me
25  know that and I'll try to repeat it or

Page 7

1   rephrase it. Otherwise, if you answer the
2   question, I'll assume you've understood it
3   and are answering appropriately.
4           If you need to take a break at some
5   point, just let us know. We can take a break
6   as needed. And I think that's about it for
7   the basic ground rules.
8           MS. HOFFMANN: I'm going to ask
9   the court reporter to mark this document as
10  Fuller Deposition Exhibit Number 1.
11          (Whereupon, the above-mentioned
12  document was marked as Exhibit 1.)
13  Q.      Mr. Fuller, I just handed you Exhibit
14  Number 1. It's a copy of the Amended Notice
15  of Deposition in this case. Have you seen
16  that document --
17  A.      Yes, I have.
18  Q.      -- previously? And if you turn --
19  well, from the bottom of the first page, the
20  notice is requesting that a witness with
21  knowledge of certain areas, and if you could
22  look at the bottom of the first page, Number
23  1, it says: All sums expended by WRR
24  Environmental Services, Inc., and not paid or
25  reimbursed by its insurers for its defense

Page 8

1   and/or for liability for damages or
2   settlement of environmental claims concerning
3   the Lake Calumet Cluster Site located north
4   of 122nd Street and south of Paxton I and II
5   Landfills, between Land & Lakes Landfill to
6   the west and Indian Ridge Marsh to the east,
7   in Chicago, Illinois. Do you see that?
8   A.      Yes.
9   Q.      Are you a person with knowledge of
10  the information listed in Number 1?
11  A.      Yes.
12  Q.      And Number 2 says: Any and all
13  damages, including the total dollar amount of
14  all damages that WRR seeks from Admiral
15  Insurance Company in the above-captioned
16  insurance coverage action.
17          Are you the person with knowledge of
18  that information also?
19  A.      Yes.
20  Q.      And did you do anything to prepare
21  for your deposition this morning?
22  A.      I reviewed some documents.
23  Q.      What sort of documents did you
24  review?
25  A.      I reviewed invoices from Michael

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
9–12

Page 9

1  Best. I reviewed assessments that were from
2  Lake Calumet to WRR and line by line the
3  invoices to our accounts payable records to
4  make sure that they all were in there.
5  Q.    And what is your position with WRR?
6  A.    Chief Financial Officer.
7  Q.    And how long have you held that
8  position?
9  A.    Since 2007. June 1st, 2007.
10 Q.    And prior to 2007, were you employed
11 by WRR?
12 A.    Yes, for two years prior to that.
13 Q.    And what was the position?
14 A.    Basically in the accounting area.
15 Q.    Did you have a job title?
16 A.    Assistant controller.
17 Q.    And what were your duties as
18 assistant controller?
19 A.    I worked with the payroll end of
20 getting that computer system up and running,
21 switching that over. I did some work for
22 another subsidiary of WRR, Northwest
23 Enterprises, I did their books for them.
24 That's what I did for the first couple of
25 years.

Page 10

1  Q.    And as CFO, what is your -- what are
2  your job responsibilities as CFO?
3  A.    I take care of all the accounting
4  records to make sure all the accounting
5  records are accurate. I take care of any
6  insurance issues, some of the legal issues
7  and oversee the financial and sales end of
8  the business.
9  Q.    So when you say you take care of
10 insurance issues, what do you mean by that?
11 A.    Getting new policies or making sure
12 we re-up our policies, that they're with the
13 right companies and for the right price, for
14 right liability.
15 Q.    For legal issues, what does your job
16 involve?
17 A.    Well, since we don't have an attorney
18 on staff, I would, you know, do the
19 contracts, look at the contracts and send
20 anything off to an attorney.
21 Q.    All right. And prior to your job as
22 an assistant controller with WRR, were you
23 employed in another position at WRR?
24 A.    No.
25 Q.    Were you employed somewhere else

Page 11

1  prior to that?
2  A.    Yes.
3  Q.    Where was that?
4  A.    Menards.
5  Q.    Can you give me a rough date range of
6  the time you were at Menards?
7  A.    1986 to 2005.
8  Q.    And what was your job with Menards?
9  A.    Inventory controller, took care of
10 the inventory for all the stores.
11 Q.    Was that for the entire time that you
12 were employed by Menards?
13 A.    I was over in their other division
14 for the last I believe it was two years
15 working on some computer programming stuff.
16 Q.    I'm sorry, what was the division?
17 A.    It was the Midwest Manufacturing
18 Store.
19 Q.    And prior to Menards, were you
20 employed?
21 A.    Joe's -- well, Prange's, Joe's Sports
22 shop, and I was going to college.
23 Q.    Tell me briefly, what is your
24 educational background?
25 A.    BBA with majors in accounting and

Page 12

1  operations management.
2  Q.    Any postgraduate work?
3  A.    No.
4  Q.    Mr. Fuller, I'm going to go back to
5  Number 1 or the first item on the Amended
6  Notice of Deposition. The subject or the
7  area requested is the sums that were expended
8  by WRR but not reimbursed or paid by its
9  insurers in connection with the Lake Calumet
10 Cluster Site matter. Are you familiar with
11 the Lake Calumet Cluster Site case?
12 A.    Yes, I am.
13 Q.    Can you tell me if there were any
14 sums expended by WRR that have not been paid
15 or reimbursed by any of WRR's insurers
16 relating to the Lake Calumet Cluster Site?
17 A.    After looking at the invoices and
18 documents and receiving a total paid by the
19 insurers, to date, as of 7/24, 2013, there
20 was approximately $34,000 in unpaid,
21 unreimbursed invoices.
22 Q.    When you say there were unreimbursed
23 invoices, what were the invoices for?
24 A.    They would have been for defense,
25 Michael Best invoices.

Page 13

1   Q.      Can you give me the dollar amount
2   again?
3   A.      Approximately 34,000.
4   Q.      Did WRR make a request of any of its
5   other insurers to pay or reimburse it for
6   these invoices?
7   A.      Yes.
8   Q.      And did the insurers respond
9   regarding whether they were going to make the
10  payments?
11  A.      The other insurers?
12  Q.      Yes.
13  A.      Some of the unpaid invoices have been
14  sent to the insurers, but nothing has been
15  reimbursed as of yet.
16  Q.      And are you familiar with
17  Mt. McKinley Insurance Company?
18  A.      Yes.
19  Q.      Is Mt. McKinley one of the insurers
20  that has been reimbursing WRR defense costs
21  in the LCC -- I'm going to refer to Lake
22  Calumet Cluster Site as the LCCS.
23  A.      Yes.
24  Q.      What about National Union, are you
25  familiar with National Union?

Page 14

1   A.      Yes.
2   Q.      And are they also reimbursing WRR?
3   A.      Yes.
4   Q.      And Evanston Insurance Company.  Is
5   Evanston another one?
6   A.      Yes.
7   Q.      Are there any other insurance
8   companies that are reimbursing WRR for any of
9   its costs associated with the LCCS?
10  A.      No.
11  Q.      You indicated that there's
12  approximately $34,000 in costs, primarily
13  defense costs, is that correct, that have not
14  been paid or reimbursed by the three
15  insurers?
16  A.      Correct.
17  Q.      Can you tell me from what dates or
18  what period of time those invoices are from
19  that have not been paid by the insurers?
20  A.      State the question again, please.
21  Q.      Okay.  You had indicated that this
22  34,000, approximately 34,000 are invoices for
23  defense costs; is that correct?
24  A.      Correct.
25  Q.      For the LCCS?

Page 15

1   A.      Yes.
2   Q.      And that a request was made of the
3   insurers to pay those invoices, correct?
4   A.      Correct.
5   Q.      Can you tell me from what dates or
6   period of time those invoices are from?
7   A.      Very recent.  I had said that they're
8   up to 7/24, so I believe that they would have
9   been probably June or July invoices for some
10  of that dollar -- 34,000.
11  Q.      So if the insurers make another
12  payment for these outstanding invoices, will
13  they be current at that point?
14  A.      Not totally current.
15  Q.      So the 34,000 are from the more
16  recent or the most recent invoices, correct?
17  A.      Correct.
18  Q.      And the insurers have not paid WRR
19  any of those funds yet, correct?
20  A.      Correct.
21  Q.      Is WRR anticipating that the insurers
22  will reimburse them for those invoices?
23  A.      WRR expects them to pay for the
24  invoices that are still outstanding.  The
25  remaining balance would be attributed to th~

Page

1   fact that the insurers, some of the insurers
2   are only paying panel rates for defense and
3   some of the invoices are above panel rates.
4   Q.      And just to clarify, when we're
5   talking about invoices, you're talking about
6   the attorney invoices from WRR's law firm,
7   correct?
8   A.      Correct.
9   Q.      From representing them.  And what
10  firm is that?
11  A.      Michael Best and Friedrich.
12  Q.      So when you say the insurers paid
13  panel rates, the insurers are paying -- are
14  you saying the insurers are paying a rate to
15  Michael Best that's different from the rate
16  that Michael Best is actually charging WRR?
17  A.      Yes.
18  Q.      And the panel rates, are they lower
19  than the normal rate that Michael Best is
20  charging WRR?
21  A.      Yes.
22  Q.      And does WRR pay to Michael Best the
23  difference in that amount?
24  A.      Yes.
25  Q.      Can you tell me approximately what

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
17–20

Page 17

1  that amount is?
2  A.    No, I do not know exactly what that
3  amount is.
4  Q.    If you wanted to determine what that
5  amount was, how would you go about doing
6  that?
7  A.    You would have to research back to
8  when the panel rates -- when we started using
9  the panel rates and check all the invoices.
10  Q.    Do you know approximately when the
11  panel rates started?
12  A.    I believe 2006.
13  Q.    So in 2006, is that when the three
14  insurers that we've identified, is that when
15  they started reimbursing WRR for these
16  expenses?
17  A.    I'm not exactly sure when they
18  started reimbursing, but the earliest
19  invoices go back to 2003. And the
20  arrangement that was made before I came on
21  and since I came on is that the insurers
22  would pay Michael -- Michael Best would
23  invoice both WRR and send that invoice on to
24  the insurers. The insurers would send the
25  funds to Michael Best to log, and then they

Page 18

1  would send it on to WRR. As far as I know
2  from the dollar amounts, all invoices back to
3  2003 have been reimbursed.
4  Q.    At the regular rate that was charged
5  by Michael Best?
6  A.    Yes.
7  Q.    But at some point the insurers
8  stopped doing that and instead started paying
9  panel rates; is that correct?
10  A.    Yes. But the 2006, when they might
11  have started that, I know that Michael Best
12  did make an adjustment in one of their
13  invoice numbers -- in invoices.
14  Q.    So when you say Michael Best made an
15  adjustment, did they adjust their invoice
16  downward so that it complied with the panel
17  rates?
18  A.    They adjusted it downward. As to
19  exactly why, I did not read into totally why
20  they did it, but there was an adjustment in
21  that 2006 letter.
22        MS. HOFFMANN: I'm going to ask
23  the court reporter to mark these next three
24  documents as Fuller Deposition Exhibit
25  Numbers 2, 3 and 4.

Page 19

1        (Whereupon, the above-mentioned
2  documents were marked as Exhibits 2, 3, and
3  4.)
4  Q.    Mr. Fuller, I'm going to ask you to
5  just take a minute and look through Exhibits
6  2, 3 and 4 because I think it might help us
7  out with some of these dates and the
8  insurers.
9  A.    (Witness complies.)
10  Q.    Mr. Fuller, if you could take a look
11  at Exhibit Number 2. I realize it's not a
12  letter addressed to you, but have you seen
13  that letter previously?
14  A.    I saw it just the other day, yes.
15  Q.    The letter is dated February 1st,
16  2006. It is addressed to Cynthia E. Smith at
17  Michael Best and Friedrich, and it's signed
18  by Gregory M. Baxter, Home Office Supervisor
19  Environmental Claims for National Union
20  Insurance Company. Do you see that?
21  A.    Yes, I do.
22  Q.    And you've already told me that
23  National Union is one of the three insurers
24  that have been reimbursing WRR relating to
25  the LCCS. Do you recall that it was sometime

Page 20

1  in 2006 when National Union started paying
2  WRR for the cost that they expended relating
3  to the LCCS?
4  A.    It looks as if on this document that
5  they go back to the 2003 invoice and paid
6  what they consider their portion so, yes,
7  this would be probably the first check to
8  reimburse all the invoices back to 2003.
9  Q.    And you referred to National Union
10  paying their portion. Are you familiar with
11  what the portion or the breakdown is among
12  the three insurers that we've identified?
13  A.    Yes. It is 50 percent National
14  Union, 37 and a half percent Evanston, 12 and
15  a half percent Mt. McKinley.
16  Q.    And at the time of this letter,
17  February 2006, was National Union paying or
18  had they paid their share or their percentage
19  of everything that was outstanding for the
20  LCCS prior to 2006?
21        MR. JANCZEWSKI: Object to form.
22        THE WITNESS: Excuse me?
23        MR. JANCZEWSKI: You can go
24  ahead and answer.
25        THE WITNESS: Can you state the

Page 21

```
1   question again?
2   Q.    (BY MS. HOFFMANN) I'll rephrase it.
3   You were saying that all the invoices from
4   2003 to 2006 were paid, correct, a few
5   minutes ago?  Not in relation to this
6   document but when I was asking you about the
7   invoices for defense costs for the LCCS and
8   you had said that all invoices for 2003 to
9   2006 were paid.  Do you recall that?
10  A.    I thought I said 2003 to current --
11  to July twenty -- well, excuse me, it
12  wouldn't have been that.  Maybe I misspoke.
13  It was -- except for the amounts in June or
14  July, I don't have the list of what the last
15  invoices were, but all of them seem to be
16  paid from the beginning invoices of 2003.
17  Q.    Okay.  And if you look at Exhibit
18  Number 3, again, it's correspondence to
19  Cynthia Smith from Mt. McKinley Insurance
20  Company or on behalf of Mt. McKinley
21  Insurance Company.  And you're familiar with
22  Mt. McKinley also, correct?
23  A.    Correct.
24  Q.    And I think you already said
25  Mt. McKinley, their share in these expenses
```

Page 22

```
1   is 12 and a half percent, correct?
2   A.    Correct.
3   Q.    And Exhibit 3 is dated February 8,
4   2006.  Do you recall that as of February of
5   2006 that Mt. McKinley was coming current
6   with paying its share of these expenses
7   relating to the LCCS?
8         MR. JANCZEWSKI:  Object to
9   form.
10  A.    I wasn't there in two thousand --
11  well, excuse me.  I wasn't working with this
12  in 2006, so I do not know that personally,
13  but by looking at this document, it's showing
14  that these invoice numbers, that these would
15  have been paid also.
16  Q.    Okay.  And if you go to Exhibit
17  Number 4, again another letter to Attorney
18  Cynthia Smith at Michael Best.  This one is
19  actually dated December 16, 2008, and it
20  appears to be on behalf of Evanston Insurance
21  Company.  Do you see that?
22  A.    Yes.
23  Q.    And as you had indicated previously,
24  Evanston is one of the three insurers that
25  are reimbursing WRR.  The letter says that
```

Page 23

```
1   Evanston agreed to a 37.5 percent share.  Is
2   that correct to your knowledge?
3   A.    Correct.
4   Q.    I want to go back to this issue with
5   the difference between panel rates because
6   I'm not sure I understood that.  I realize
7   that you had indicated that there was an
8   amount outstanding because there were more
9   recent invoices that the insurers had not yet
10  reimbursed, correct?
11  A.    Correct.
12  Q.    And I had asked you if that was the
13  reason or the basis for the entire
14  outstanding amount right now, and you said,
15  no, not entirely because there's a difference
16  between panel rates.  Do you recall that?
17  A.    Right.
18  Q.    So I'm trying to get at what time
19  period that may have occurred that the
20  difference was created in the panel rates?
21  A.    If you look at Exhibit 2, page 2,
22  paragraph 1, it first mentions we offer to
23  pay the prevailing reasonable rates in your
24  locality.
25  Q.    Okay.  And the paragraph says:
```

Page

```
1   Please also be advised that on a
2   going-forward basis, they will not pay
3   Michael Best the rates provided in your
4   previously submitted invoices.
5         But prior to this, the date of
6   February 2006, they did pay those invoices,
7   correct?
8   A.    Yes.
9   Q.    And then after that date or going
10  forward, the insurers were paying panel rates
11  as opposed to what the Michael Best rate was
12  previously, correct?
13  A.    Yes.
14  Q.    So the difference between the panel
15  rates and whatever the regular rate or the
16  rate that Michael Best was previously
17  charging, did WRR have to continue paying
18  that difference to Michael Best so that
19  Michael Best was paid their regular rate
20  going forward?
21  A.    Yes.
22  Q.    And was that the case from 2006 to
23  present?
24  A.    I'm not exactly sure when panel rates
25  were lower than the Michael Best rates.
```

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
25–28

Page 25

1  Q.    Can you explain what you mean by
2  that? You're not sure when they were lower?
3  A.    There could have been invoices by
4  Michael Best after 2006 that were within the
5  panel rates. At some point in time, and I'm
6  not exactly sure when, the Michael Best rates
7  were above the panel rates, and that's when
8  WRR has been paying more for its defense than
9  the insurers are reimbursing.
10 Q.    And I know you said you don't know
11 the time. Roughly can you -- do you know
12 what year that would have been? Was it more
13 recently? Does it seem like it was years
14 ago?
15 A.    No, more recently.
16 Q.    It's more recently?
17 A.    Yes.
18 Q.    This year?
19 A.    No. I don't want to speculate, but
20 maybe two years.
21 Q.    And, again, if I wanted to figure
22 this out, try to find out what that amount
23 was, how would I go about doing that?
24 A.    If you wanted to figure that out,
25 from the documentation that I was given that

Page 26

1  was given to Admiral, the approximate 34,000
2  that I said that was over, I would subtract
3  the amount of invoices that have been
4  submitted but not reimbursed by the insurers
5  and the difference between that would
6  probably -- the only other thing it could be
7  is the panel rate difference.
8  Q.    Okay. But I mean I would need to see
9  the amount paid by the insurers, correct?
10 A.    You would have to know the total
11 dollar amount that was -- the insurers have
12 paid, reimbursed WRR, yes.
13 Q.    And see what the difference is
14 between what the insurers paid and what WRR
15 actually paid to Michael Best; is that
16 correct?
17 A.    Correct.
18 Q.    And you're indicating that WRR is
19 actually paying Michael Best more than what
20 the insurers are reimbursing?
21 A.    Yes, currently.
22 Q.    Do you know roughly what that dollar
23 amount would be?
24 A.    I do not.
25 Q.    And is that limited to legal services

Page 27

1  relating to the LCCS, the Lake Calumet
2  Cluster Site invoices?
3  A.    That's the only panel rate that we
4  have going on right now with any of those
5  insurers. I guess I don't understand your
6  question other than that.
7  Q.    All right. Well, as I understand it,
8  and WRR has produced some documents
9  indicating that, you know, they've written
10 checks to Michael Best, payment of Michael
11 Best invoices, but it's not necessarily just
12 for the matter relating to defense relating
13 to the LCCS. There may be other legal
14 matters that Michael Best is handling for
15 WRR.
16     So my question was this difference
17 in payment of rates where WRR is paying more
18 than what the insurers are reimbursing, is
19 that limited to invoices relating to the
20 LCCS?
21 A.    Michael Best rates are not limited to
22 just the LCCS. It's for all matters that any
23 of those attorneys would handle with LCCS or
24 anything else. The panel rates that were
25 imposed by AIG and Mt. McKinley and Evanston

Page 28

1  are only for this matter.
2  Q.    So let me try to rephrase this
3  another way. For the invoices for legal work
4  pertaining specifically to the LCCS matter,
5  okay, Michael Best sends an invoice and does
6  the invoice that Michael Best sends to WRR,
7  do they bill at the panel rates or are they
8  billing at their regular or a different rate
9  from the panel rate?
10 A.    They are billing at their normal
11 rate.
12 Q.    Okay.
13 A.    Which would be different than the
14 panel rate.
15     MS. HOFFMANN: I'll ask the
16 court reporter to mark this as Fuller
17 Deposition Exhibit Number 5.
18     (Whereupon, the above-mentioned
19 document was marked as Exhibit 5.)
20     MR. JANCZEWSKI: I'm going to
21 actually object to this. I believe or I've
22 been informed that this was probably
23 mistakenly produced in that this was an
24 attorney-created document. So, you know,
25 like I said, I object to having our witness

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
29-32

Page 29

1  testify to something that was created by an
2  attorney at Michael Best.
3       MS. HOFFMANN: All right. Well,
4  I mean it was produced. This is the first
5  time I've heard that there was an issue
6  with --
7       MR. JANCZEWSKI: Yeah, it came
8  up yesterday.
9       MS. HOFFMANN: -- the document.
10      MR. JANCZEWSKI: It came up
11  yesterday.
12      MS. HOFFMANN: Well, I'm going
13  to ask him if he's seen it, if he can
14  identify it. I am not going to ask him to,
15  you know, disclose any attorney-client --
16      MR. JANCZEWSKI: You know what,
17  I'm going to instruct the witness not to
18  answer questions about Exhibit 5.
19      MS. HOFFMANN: All right.
20  Well --
21      MR. JANCZEWSKI: And we'll look
22  at -- I mean we'll have to fight about this
23  if we have to and see if there's a clawback
24  agreement. I would ask for courtesy of
25  co-counsel to permit us to clawback, but I'm

Page 30

1  going to instruct the witness not to answer.
2       MS. HOFFMANN: I mean I'd like
3  to just, you know, identify the exhibit on
4  the record, ask him if he's seen it and
5  then --
6       MR. JANCZEWSKI: You can
7  identify the document on the record, but
8  aside from that, I'm going to instruct him
9  not answer.
10      MS. HOFFMANN: Let the record
11  reflect that the court reporter has marked
12  Fuller Deposition Exhibit Number 5, which
13  consists of documents produced by WRR and
14  Bates numbered WRR001618 through WRR001625.
15 Q.    (BY MS. HOFFMANN) Mr. Fuller, you've
16  been handed Exhibit Number 5, which has been
17  identified for the record, and have you seen
18  this document previously?
19      MR. JANCZEWSKI: I'm going to
20  object and instruct the witness not to answer
21  and state on the record this is a document
22  that was created internally by WWR's counsel
23  as a mechanism to track the payments from the
24  various insurers and it was mistakenly
25  produced during the course of discovery.

Page 31

1       MS. HOFFMANN: And the basis for
2  your objection is?
3       MR. JANCZEWSKI: Attorney-client
4  privilege -- or attorney work product.
5       MR. ZIMMERMAN: And what part of
6  the document is work product? I guess if
7  it's tracking the payment and invoices that
8  have been produced, correct?
9       MS. HOFFMANN: To my knowledge,
10  WRR has indicated that they've produced all
11  of the --
12      MR. JANCZEWSKI: Are we having
13  two counsel talk at this deposition?
14      MS. HOFFMANN: Can we go off --
15      MR. ZIMMERMAN: We'll go off.
16      MS. HOFFMANN: We'll go off the
17  record.
18      (Off-the-record discussion.)
19      (The last question was read by
20  the reporter.)
21 Q.    (BY MS. HOFFMANN) Can you answer if
22  you've seen this document previously?
23 A.    Yes, I've seen this document.
24 Q.    Did you create this document?
25 A.    No, I did not create this document.

Page 32

1  Q.    Do you know who created this
2  document?
3  A.    I believe an attorney at Michael Best
4  and Friedrich.
5  Q.    I don't need to ask you any more
6  questions from the document, specifically so
7  you can --
8       MR. JANCZEWSKI: And just to
9  clarify for the record, we went off record
10  before the last series of three questions
11  when we discussed document 5 and some of the
12  issues that counsel for WRR has with that
13  document and that WRR may be exercising any
14  clawback rights that it has to that document,
15  and the parties have come to an agreement
16  that until that issue is resolved that
17  document will be placed under seal.
18 Q.    (BY MS. HOFFMANN) Mr. Fuller, does
19  WRR keep its own records of payments that are
20  being made by the insurers related to the
21  LCCS matter?
22 A.    No other written record other than
23  where the deposit was made and we received
24  checks.
25 Q.    So you're saying the check itself?

Page 33

1 A.    Correct.
2 Q.    Okay.  Does WRR try to keep any sort
3 of a record or a tally on, you know, this is
4 what's been paid, this amount hasn't been
5 paid yet?
6 A.    All invoices are entered into our
7 accounts payable system.
8 Q.    Okay.  So you're talking about the
9 invoices from Michael Best, correct?
10 A.    Correct.
11 Q.    What about the payments that are
12 being made by the three insurers, those
13 payments are actually made to WRR, correct?
14 A.    There are checks that are written to
15 Michael Best and Friedrich, and then at some
16 point in time it was changed to send the
17 check to WRR.
18 Q.    So when Mt. McKinley, Evanston and
19 National Union send funds to pay for WRR's
20 defense costs in the LCCS, they actually
21 write a check to WRR, correct?
22 A.    There has been checks written to
23 Michael Best and Friedrich, Michael Best and
24 Friedrich care of WRR Environmental Services,
25 Inc., and directly to WRR Environmental

Page 34

1 Services, Inc.
2 Q.    Is there any reason why some are
3 written directly to Michael Best and some are
4 written to WRR that you're aware of?
5 A.    I think there was just a change when
6 the CFO in 2006, Dave Peters, may have
7 changed things to have it go to WRR instead
8 of to Michael Best.  Excuse me, let me not go
9 to -- they all were received at first by
10 Michael Best, but the pay to the order of was
11 changed to WRR.
12 Q.    Roughly can you tell me what time
13 period that was?
14 A.    2006.
15 Q.    So from 2006, the insurers would make
16 the checks payable to WRR, correct?  So in
17 other words, it's the more recent that the
18 checks were made to WRR?
19 A.    When you look through the documents
20 that were produced, there are checks that are
21 sent to WRR, paid to the order of WRR, paid
22 to the order of Michael Best c/o WRR.  They
23 most recently since 2006 have more
24 consistently been to WRR, paid to the order
25 of WRR director.

Page 35

1 Q.    So when WRR receives those checks,
2 what do they do with them, checks from the
3 insurers?
4 A.    We put them into our crude account
5 and then we deposit them, and we make sure
6 we've paid Michael Best, or whomever, the
7 necessary funds.
8 Q.    So you don't just endorse them over
9 to Michael Best, they're deposited in WRR
10 funds?
11 A.    There is one instance I believe that
12 there was the checks endorsed right to
13 Michael Best.
14 Q.    So does WRR keep any record of
15 payments from the insurer if they were
16 paid -- let me restate that.  Does WRR keep a
17 record of whether the checks that they
18 receive from the insurers are payment in full
19 for the invoices that were submitted to the
20 insurers?
21 A.    We rely on Michael Best to keep that
22 accounting.
23 Q.    So WRR doesn't keep its own records
24 reflecting that; is that correct?
25 A.    We have the records.  We just don't

Page 36

1 have them in a written record format.  We
2 would have to go back and research.
3 Q.    What would you need to do to research
4 that?
5 A.    We'd have to go find all the checks
6 that -- and find all the checks that were
7 paid to WRR and write a record.
8 Q.    So it's not something that WRR does
9 regularly?  You don't keep a record of, for
10 example, three checks came in from the three
11 insurers and they total the amount of the
12 invoice that's outstanding?
13 A.    We have Michael Best do that.
14 Q.    Do that for you?
15 A.    That's why they receive the check
16 first.
17 Q.    When you say that they do it and they
18 receive the check first, does Michael Best
19 provide you with the summary then of payments
20 that were made or do they let you know if,
21 you know, the payment was not made in full by
22 the insurers?
23        MR. JANCZEWSKI:  Object and
24 privileged.  Don't answer that.
25 Q.    (BY MS. HOFFMANN) How do you know if

Page 37

1   the insurers, between the three of them, have
2   paid the full outstanding amount of the
3   invoices?
4   A.      We allow Michael Best again to take
5   care of that accounting.  And we can ask for
6   a summary of that accounting from Michael
7   Best.
8   Q.      But other than receiving it from your
9   attorneys, WRR would have no idea; is that
10  correct?
11  A.      Unless we look back into all of our
12  deposits.
13  Q.      And, again, what would you need to do
14  to figure that out if you wanted to find out,
15  other than your attorney telling you --
16  A.      We'd have to go --
17  Q.      -- this is the amount?
18  A.      We would have to go find when those
19  deposits were made and go look for those
20  deposit slips, and the copy of the checks
21  attached to them.
22  Q.      So you'd need the deposit slips, you
23  would need to have the invoices with you,
24  correct?  You would need to know the amount
25  of the invoice?

Page 38

1   A.      Yeah, invoice numbers.
2   Q.      So you would have the invoice, you
3   would need to have the checks from the three
4   insurers, correct?
5   A.      Correct.
6   Q.      And you'd have to match them up and
7   total them up and see if the amount received
8   from the insurer totalled the amount that the
9   invoice is requesting, correct?
10  A.      Correct.
11  Q.      But normally that's not something
12  that you do?
13  A.      Correct.
14  Q.      To the extent that that's done, to
15  your knowledge, only Michael Best does that?
16  A.      Michael Best does the record keeping
17  on what the insurers paid.
18  Q.      Mr. Fuller, are you aware of any
19  instances where the insurers did not pay,
20  again, between the three of them together,
21  the full amount of the outstanding invoice?
22  A.      Other than the panel rates, no, I do
23  not know of any time when any of them did not
24  pay what was submitted.
25  Q.      Are you aware of any instances where

Page 39

1   one of the insurers overpaid or may have paid
2   more than the amount that was outstanding on
3   the invoice?
4   A.      Again, Michael Best keeps an
5   accounting of that and it does come to mind
6   that Mt. McKinley may pay a little bit here
7   and there over for something and then it gets
8   corrected later.
9   Q.      And when you say it gets corrected
10  later, how does that get corrected?
11  A.      I believe they might pay a little
12  less for -- or Michael Best might be sending
13  them back some funds.
14  Q.      And do you keep any accounting of
15  that instance?
16  A.      Again, Michael Best keeps the
17  accounting for what the insurers pay.
18  Q.      Has there ever been an instance where
19  WRR has reimbursed or paid back an amount to
20  an insurer because they overpaid for an
21  invoice?
22  A.      I am not sure of that.
23  Q.      Do you have any knowledge if Michael
24  Best has ever paid back to an insurer funds
25  that WRR originally received from them?

Page

1   A.      No, I do not.
2   Q.      You had indicated that you recalled
3   at least one instance where Mt. McKinley may
4   have overpaid an amount?
5   A.      Looking into some of those documents,
6   the invoices -- or not the invoice but the
7   checks that were provided by Michael Best, it
8   does look like -- I can't remember.  It
9   looked like they were paid back some funds I
10  believe.  I can't be totally sure.  I can't
11  recall all the pieces of documents.
12  Q.      Do you recall -- and again, roughly,
13  I'm not looking for exact dollar
14  amounts -- what sort of dollar amount that
15  may have been?
16  A.      I do not know.  I just -- as I was
17  perusing through all the documents, it seemed
18  to catch my eye.  I may be wrong also I
19  guess.
20  Q.      Can you tell me how frequently funds
21  are received from the insurers for LCCS
22  costs?
23  A.      Approximately quarterly.
24  Q.      So you indicated that there is an
25  amount or invoices that are outstanding since

Page 41

1 July of this year, correct? Do you recall
2 that? I think you had said through July?
3 A.     The invoices that were part of the
4 documentation when I checked with my accounts
5 payable, what was paid, what was not paid, it
6 was the last five invoices perhaps had not
7 been paid to Michael Best by us.
8 Q.     So would that be for the third
9 quarter of this year?
10 A.     Probably I would imagine second
11 quarter. It was up to July 24th I believe,
12 those documents, invoices had come through.
13 Q.     So they were invoices from the second
14 quarter, they were submitted to the insurers
15 and the payment -- a third quarter payment
16 has not been made yet? Is that --
17 A.     A payment has not been made yet.
18       MS. HOFFMANN: Mark this as
19 Fuller Exhibit 6.
20       (Whereupon, the above-mentioned
21 document was marked as Exhibit 6.)
22 Q.     Mr. Fuller, the court reporter has
23 handed you what we have marked as Exhibit
24 Number 6. Take a minute to look at that and
25 again I understand it's -- it's a letter

Page 42

1 dated March 7, 2013. It's from Michael Best
2 and it's not directed to you, but take a look
3 at it and I'm not going to ask you about
4 specific invoices but just generally. And
5 have you seen this document previously?
6 A.     Yes.
7 Q.     Do you typically receive or are you
8 copied on -- were you copied on this
9 correspondence from Michael Best?
10 A.     I believe so, yes.
11 Q.     Are you familiar with and, again, not
12 specifically the terms of, but generally the
13 participation agreement or the participation
14 that WRR has had in the Administrative Order
15 on Consent? If you look at the second
16 paragraph of the letter, it references a
17 number of documents enclosed. The first one
18 is the Administrative Order on Consent.
19 A.     Yes.
20 Q.     Two, Updated Interim Allocation
21 Table. All right. Are you familiar at all
22 with those documents or those items?
23 A.     Yes. I've been working with Michael
24 Best on them.
25 Q.     And WRR is part of what they refer to

Page 43

1 as a PRP Group, correct?
2 A.     Correct.
3 Q.     And the PRP Group includes WRR and
4 other companies that are potentially
5 responsible parties per the EPA?
6 A.     Correct.
7 Q.     You understand that?
8 A.     Yes.
9 Q.     And WRR, along with other PRPs, have
10 participated in an order on consent with the
11 EPA. Are you familiar with that?
12 A.     Yes.
13 Q.     And that involves -- are you familiar
14 with the fact that that involved WRR and
15 these other PRPs making a payment to the EPA
16 in connection with that order on consent?
17 A.     Yes.
18 Q.     And I'm not going to ask you for
19 dollar amounts for WRR, but are you familiar
20 with the fact that pursuant to the PRP
21 agreement or allocation that there was a
22 certain amount that WRR was expected to pay
23 in connection with this order on consent?
24 A.     Yes, there was two assessments.
25 Q.     When you say two assessments --

Page 44

1 A.     There's one on the order of consent
2 and I believe there's one for --
3 Q.     Was it on a surety?
4 A.     Yes.
5 Q.     On the surety?
6 A.     Yes.
7 Q.     So one is the order of consent and
8 the other one is to a surety fund for future
9 remedial action; is that correct?
10 A.     Correct.
11 Q.     And by or from the group WRR was
12 requested or told that this -- that there was
13 a particular share or dollar amount that WRR
14 was expected to contribute, correct?
15 A.     Correct.
16 Q.     Are you aware of the fact that that
17 amount that WRR contributed was actually paid
18 or contributed by the three insurers
19 we've identified, Mt. McKinley, Evanston, and
20 National Union?
21 A.     Yes --
22 Q.     Correct?
23 A.     -- it was.
24 Q.     Were there any funds or any part of
25 that of WRR's share that was not paid by the

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
45–48

Page 45

1   three insurers?
2   A.    Yes.
3   Q.    Can you tell me what that was?
4   A.    Exactly, no.
5   Q.    And, again, if not a precise dollar
6   amount, if you could just explain to me.
7   A.    The dollar amount, I believe was
8   Mt. McKinley -- I'm not sure, one of the
9   three insurers -- was less than their
10  percentage, and I believe it was because they
11  took a portion of the deductible.
12  Q.    Okay. When you say they took a
13  portion of their deductible --
14  A.    I believe they took a portion of the
15  deductible.
16  Q.    You're not certain?
17  A.    I'm not certain, but there was a
18  difference so we had that check deposited by
19  WRR and WRR wrote a check to the Lake Calumet
20  Cluster Site fund for a little bit more than
21  the check that was reimbursed. Maybe $500.
22  Otherwise, the other insurers paid directly
23  to the Lake Calumet Cluster Site.
24  Q.    Okay. So one of the insurers, you
25  think possibly Mt. McKinley, was $500 short

Page 46

1   on their contribution; is that correct?
2   A.    That might be it.
3   Q.    Did you have any follow-up with
4   Mt. McKinley, or whichever insurer was short,
5   about why they were short on the funds?
6   A.    Again, I handled that through Michael
7   Best and, you know, they have the -- the
8   reason was given to me prior to that. I just
9   can't remember exactly what that reason was,
10  and that's the reason why we made a setup for
11  them to send us the check and we'd send a
12  check in total to Lake Calumet Cluster
13  because we had to get it there on a timely
14  basis.
15  Q.    Do you know if Mt. McKinley, if it
16  was Mt. McKinley, or whichever insurer it
17  was, if they were asked to contribute the
18  balance or the 500 that they were short?
19  A.    I am not sure. In my mind, it was,
20  again, a portion of the deductible, so
21  therefore the total deductible would be
22  decreased from any future payments.
23  Q.    You're not certain whether they were
24  asked to pay the difference or not?
25  A.    That conversation happened, you know,

Page 47

1   six months ago or whatever.
2   Q.    Do you know if at some point the
3   insurer did make that payment of the $500
4   they were short?
5   A.    No, they did not make it.
6   Q.    So it didn't happen at any time after
7   that?
8   A.    I'm pretty sure it did not happen.
9   Q.    Since the time earlier this year when
10  the payment was made in connection with the
11  order on consent and the surety obligation,
12  has WRR made any additional payments to the
13  EPA in connection with --
14  A.    No.
15  Q.    -- the LCCS?
16  A.    No.
17        MS. HOFFMANN: Can we take like
18  five minutes?
19        MR. JANCZEWSKI: Sure.
20        (Break taken.)
21  Q.    (BY MS. HOFFMANN) Mr. Fuller, are you
22  aware that WRR has been sharing defense costs
23  with other PRPs for the LCCS?
24  A.    Yes.
25  Q.    Michael Best and Friedrich is

Page 48

1   representing WRR and how many other parties
2   in this same matter?
3   A.    I believe it was four.
4   Q.    Including WRR?
5   A.    Including WRR.
6   Q.    So when Michael Best bills WRR for
7   their defense costs in this matter, how is
8   that handled among the four clients?
9   A.    I believe they handle it by charging
10  25 percent for anything that was group
11  related, shared group related on the cost,
12  and anything that was just client WRR
13  business was invoiced at 100 percent.
14  Q.    So does WRR receive a Michael Best
15  invoice that already reflects WRR's 25
16  percent share?
17  A.    Yes.
18  Q.    So you don't get a bill and you don't
19  look at the total and say, you know, divide
20  that by four and that's what WRR needs to
21  pay?
22  A.    Correct.
23  Q.    So the invoice that's coming to WRR
24  already reflects the total amount for this
25  matter that Michael Best is seeking --

Case 2:10-cv-00843-RTR   Filed 10/31/13   Page 13 of 28   Document 58-12

Page 49

1   A.      Yes.
2   Q.      -- from WRR, correct?
3   A.      Yes.
4   Q.      Mr. Fuller, I had asked you again
5   previously about, you know, how I would go
6   about figuring out what the amount is, if
7   there is an amount, a difference between what
8   WRR has paid versus what the insurers have
9   paid, and I know you explained that you go
10  through checks and so forth.  Is there any
11  other accounting or accounting report that
12  WRR has that would reflect that?
13  A.      To find the difference between the
14  panel rate?
15  Q.      Whether it's the panel rate or for
16  whatever reason.  The difference between what
17  the insurers have paid versus what WRR had to
18  pay?
19  A.      Other than relying on information
20  from Michael Best or from our insurers, WRR
21  itself would have to look at all the deposits
22  and retrieve all the checks that were paid to
23  it by the insurers.
24  Q.      So basically, Michael Best is keeping
25  WRR's accounting records on this matter?

Page 50

1   A.      Pertaining to the amounts received by
2   the insurers, yes.  Or paid by the insurers,
3   yes.
4   Q.      Is there anyone else at WRR that
5   would have I guess better knowledge than you
6   on this topic?
7   A.      No.
8   Q.      Mr. Fuller, going back to Exhibit
9   Number 1, which was the notice of deposition,
10  the second item listed there was a request
11  for a witness with knowledge of what WRR's
12  damages are that they are claiming from
13  Admiral in this case.  Are you a witness with
14  knowledge of that information?
15  A.      Yes.
16  Q.      Are you the witness with the most
17  knowledge from WRR on that?
18  A.      Yes.
19  Q.      Can you tell me what are the damages
20  that WRR is seeking from Admiral in this
21  case?
22  A.      In terms of dollar amounts, because
23  this is a continuing site, we really cannot
24  give a dollar amount or speculate a dollar
25  amount at any time right now.  As Exhibit 6

Page 51

1   mentions, they had just started the remedial
2   investigation of groundwater.  There's a lot
3   more to go on there.  Illinois EPA has done
4   some work and they have indicated that they
5   want reimbursement.  The site is -- the PRP
6   Group does not know exactly what they will be
7   involved in in cleaning up at the site.  So
8   the damages for cleanup on the site are not
9   determinable at this time.
10  Q.      Is there an amount, a current amount
11  as of this date that this is the amount of
12  damages --
13  A.      WRR --
14  Q.      I'm sorry.  Let me finish.  When I
15  say damages, I'm not talking about, you know,
16  the cleanup or remediation.  I'm talking
17  about the damages that WRR is seeking from
18  Admiral in this case.
19  A.      WRR would seek from Admiral that it
20  would join the insurers group, and therefore
21  it may have to settle with the insurers group
22  an amount of past costs that have been paid
23  and a future percentage of future costs that
24  would need to be paid.
25  Q.      Other than that, is WRR seeking any

Page 52

1   other amounts from Admiral in this
2   litigation?
3   A.      Just possibly future costs at the
4   site and past costs.
5   Q.      And, again, other than sharing with
6   the insurers or participating with the
7   insurers, as of this date, are there any
8   amounts that WRR is seeking from Admiral?
9   A.      Not to the best of my knowledge.
10  Q.      Can you tell me to date approximately
11  what that amount is that WRR is seeking for
12  Admiral to contribute?
13  A.      If Admiral became part of the
14  insurers group, the insurers group, from my
15  knowledge, not having been in the group, it's
16  based on the time period, length of period
17  that the insurers were on the liability.
18  Therefore, if Admiral were to join,
19  speculation would be that Admiral would have
20  one-third of that percentage or one-third of
21  the amounts due in the future.  And I believe
22  the amounts paid by the insurers right now,
23  again not positive of dollar amounts, but it
24  was about 292,000 of past costs that they
25  have reimbursed.

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
53–54

Page 53

1          MS. HOFFMANN: Can we go off for
2    a minute?
3          (Short break.)
4          MS. HOFFMANN: No further
5    questions.
6          MR. JANCZEWSKI: I have
7    nothing.
8          MS. HOFFMANN: Does the witness
9    reserve or waive signature?
10         MR. JANCZEWSKI: Would you like
11   to look at your transcript, just review it to
12   make sure it's --
13         THE WITNESS: No.
14         MR. JANCZEWSKI: No?
15         MS. HOFFMANN: Okay. So the
16   witness is waiving signature. Thank you.
17         COURT REPORTER: Are you
18   ordering a transcript?
19         MS. HOFFMANN: I am, yes.
20         COURT REPORTER: Do you need a
21   copy, Mr. Janczewski?
22         MR. JANCZEWSKI: Yes, I would.
23     AND FURTHER DEPONENT SAITH NOT
24   (Deposition concluded at 11:35 a.m.)
25         (Signature waived.)

Page 54

1              COURT REPORTER'S CERTIFICATE
2    STATE OF WISCONSIN:
3    COUNTY OF MILWAUKEE:
4
5         I, SARA R. ROGAN, Reporter and
     Notary Public, Milwaukee County, Wisconsin,
6    CERTIFY:
7         1.  The foregoing deposition was
     taken before me at the time and place stated
8    in the foregoing styled cause with the
     appearances as noted;
9
          2.  Being a Court Reporter, I then
10   reported the deposition in Stenotype to the
     best of my skill and ability, and the
11   foregoing pages contain a full, true and
     correct transcript of my said Stenotype notes
12   then and there taken;
13        3.  I am not in the employ of and am
     not related to any of the parties or their
14   counsel, and I have no interest in the matter
     involved.
15
16        WITNESS MY SIGNATURE, this, the
17   _____ day of _____, 2013.
18
19
20              _____
                SARA R. ROGAN
                Court Reporter and
21              Notary Public ***
22
23   My commission expires:
     July 18, 2017
24
25

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
Index: $34,000..amounts

**$**

**$34,000**
 12:20
 14:12

**$500**
 45:21,25
 47:3

**1**

**1** 7:10,12,
 14,23
 8:10 12:5
 23:22
 50:9

**100** 48:13

**11:35**
 53:24

**12** 20:14
 22:1

**122nd** 8:4

**16** 22:19

**1986** 11:7

**1st** 9:9
 19:15

**2**

**2** 8:12
 18:25
 19:2,6,11
 23:21

**2003** 17:19
 18:3
 20:5,8
 21:4,8,
 10,16

**2005** 11:7

**2006**
 17:12,13
 18:10,21
 19:16
 20:1,17,
 20 21:4,9
 22:4,5,12
 24:6,22
 25:4
 34:6,14,
 15,23

**2007** 9:9,
 10

**2008** 22:19

**2013** 12:19
 42:1

**24th** 41:11

**25** 48:10,
 15

**292,000**
 52:24

**3**

**3** 18:25
 19:2,6
 21:18
 22:3

**30(b)(6)**
 5:7

**34,000**
 13:3
 14:22
 15:10,15
 26:1

**37** 20:14

**37.5** 23:1

**4**

**4** 18:25

**19:3,6**
 22:17

**5**

**5** 28:17,19
 29:18
 30:12,16
 32:11

**50** 20:13

**500** 46:18

**6**

**6** 41:19,
 21,24
 50:25

**7**

**7** 42:1

**7/24** 12:19
 15:8

**8**

**8** 22:3

**A**

**a.m.** 53:24

**above-
captioned**
 8:15

**above-
mentioned**
 7:11 19:1
 28:18
 41:20

**advised**

**account**
 35:4

**accounting**
 9:14
 10:3,4
 11:25
 35:22
 37:5,6
 39:5,14,
 17 49:11,
 25

**accounts**
 9:3 33:7
 41:4

**accurate**
 10:5

**action**
 8:16 44:9

**additional**
 47:12

**addressed**
 19:12,16

**adjust**
 18:15

**adjusted**
 18:18

**adjustment**
 18:12,15,
 20

**Administrat
ive** 42:14,
 18

**Admiral**
 6:14,16
 8:14 26:1
 50:13,20
 51:18,19
 52:1,8,
 12,13,18,
 19

**advised**

**24:1**

**agreed**
 23:1

**agreement**
 29:24
 32:15
 42:13
 43:21

**ahead**
 20:24

**AIG** 27:25

**allocation**
 42:20
 43:21

**Amended**
 7:14 12:5

**amount**
 8:13 13:1
 16:23
 17:1,3,5
 23:8,14
 25:22
 26:3,9,
 11,23
 33:4
 36:11
 37:2,17,
 24 38:7,
 8,21
 39:2,19
 40:4,14,
 25 43:22
 44:13,17
 45:6,7
 48:24
 49:6,7
 50:24,25
 51:10,11,
 22 52:11

**amounts**
 18:2
 21:13
 40:14

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
Index: and/or..clients

43:19
50:1,22
52:1,8,
21,22,23

and/or 8:1

answering
7:3

anticipatin
g 15:21

appears
22:20

appropriate
ly 7:3

approximate
26:1

approximate
ly 5:19
12:20
13:3
14:12,22
16:25
17:10
40:23
52:10

area 9:14
12:7

areas 7:21

arrangement
17:20

assessments
9:1
43:24,25

assistant
9:16,18
10:22

assume 7:2

attached
37:21

attorney
10:17,20

16:6
22:17
29:2 31:4
32:3
37:15

attorney-
client
29:15
31:3

attorney-
created
28:24

attorneys
27:23
37:9

attributed
15:25

aware 34:4
38:18,25
44:16
47:22

_____

B

back 12:4
17:7,19
18:2
20:5,8
23:4 36:2
37:11
39:13,19,
24 40:9
50:8

background
11:24

balance
15:25
46:18

based
52:16

basic 7:7

basically
9:14
49:24

basis
23:13
24:2 31:1
46:14

Bates
30:14

Baxter
19:18

BBA 11:25

beginning
21:16

behalf
22:20

bill 28:7
48:18

billing
28:8,10

bills 48:6

bit 39:6
45:20

books 9:23

bottom
7:19,22

break 7:4,
5 47:20
53:3

breakdown
20:11

briefly
11:23

business
10:8
48:13

_____

C

c/o 34:22

Calumet
8:3 9:2
12:9,11,
16 13:22
27:1
45:19,23
46:12

care 10:3,
5, 11:9
33:24
37:5

case 7:15
12:11
24:22
50:13,21
51:18

catch
40:18

CFO 10:1,2
34:6

change
34:5

changed
33:16
34:7,11

charged
18:4

charging
16:16,20
24:17
48:9

check 17:9
20:7
32:25
33:17,21
36:15,
45:18,19,
21 46:11,

12

checked
41:4

checks
27:10
32:24
33:14,22
34:16,18,
20 35:1,
2,12,17
36:5,6,10
37:20
38:3 40:7
49:10,22

Chicago
8:7

Chief 9:6

civil 5:7
6:8

claim 5:22
6:5

claiming
50:12

claims 8:2
19:19

clarify
16:4 32:9

clawback
29:23,25
32:14

cleaning
51:7

cleanup
51:8,16

clear 6:19

client
48:12

clients
48:8

ESQUIRE

Case 2:10-cv-00843-RTR Filed 10/31/13 Page 18 of 28 Document 50-15

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
Index: Cluster..deposition

Cluster
8:3
12:10,11,
16 13:22
27:2
45:20,23
46:12

co-counsel
29:25

college
11:22

companies
10:13
14:8 43:4

company
6:5,15,16
8:15
13:17
14:4
21:20,
22:21

complied
18:16

complies
19:9

computer
9:20
11:15

concluded
53:24

connection
12:9
43:16,23
47:10,13

consent
42:15,18
43:10,16,
23 44:1,7
47:11

consistentl
y 34:24

consists
30:13

continue
24:17

continuing
50:23

contracts
10:19

contribute
44:14
46:17
52:12

contributed
44:17,18

contributio
n 46:1

controller
9:16,18
10:22
11:9

conversatio
n 46:25

copied
42:8

copy 7:14
37:20
53:21

correct
14:13,16,
23,24
15:3,4,
16,17,19
20 16:7,8
18:9
21:4,22,
23 22:1,
23:2,3,
10,11
24:7,12
26:9,16,
17 31:8
33:1,9,

10,13,21
34:16
35:24
37:10,24
38:4,5,9,
10,13
43:1,2,6
44:9,10,
14,15,22
46:1
48:22
49:2

corrected
39:8,9,10

corresponde
nce 21:18
42:9

cost 20:2
48:11

costs
13:20
14:9,12,
13,23
21:7
33:20
47:22
48:7
51:22,23
52:3,4,24

counsel
30:22
31:13
32:12

couple
9:24

court 6:19
7:9 18:23
28:16
30:11
41:22
53:17,20

courtesy
29:24

coverage
5:25 6:7
8:16

create
31:24,25

created
23:20
29:1
30:22
32:1

crude 35:4

current
15:13,14
21:10
22:5
51:10

Cynthia
19:16
21:19
22:18

_____

D

damages
8:1,13,14
50:12,19
51:8,12,
15,17

date 11:5
12:19
24:5,9
51:11
52:7,10

dated
19:15
22:3,19
42:1

dates
14:17
15:5 19:7

Dave 34:6

day 19:14

December
22:19

decreased
46:22

deductible
45:11,13,
15 46:20,
21

defense
7:25
12:24
13:20
14:13,23
16:2 21:7
25:8
27:12
33:20
47:22
48:7

DEPONENT
53:23

deposed
5:18 6:3

deposit
32:23
35:5
37:20,22

deposited
35:9
45:18

deposition
5:7,13,21
6:10,12
7:10,15
8:21 12:6
18:24
28:17
30:12
31:13
50:9
53:24

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
Index: deposits..financial

deposits
  37:12,19
  49:21

determinabl
e 51:9

determine
  17:4

difference
  16:23
  23:5,15,
  20 24:14,
  18 26:5,
  7,13
  27:16
  45:18
  46:24
  49:7,13,
  16

directed
  42:2

directly
  33:25
  34:3
  45:22

director
  34:25

disclose
  29:15

discovery
  30:25

discussed
  32:11

discussion
  31:18

divide
  48:19

division
  11:13,16

document
  7:9,12,16
  20:4 21:6

22:13
28:19,24
29:9
30:7,18,
21 31:6,
22,23,24,
25 32:2,
6,11,13,
14,17
41:21
42:5

documentati
on 25:25
41:4

documents
  8:22,23
  12:18
  18:24
  19:2 27:8
  30:13
  34:19
  40:5,11,
  17 41:12
  42:17,22

dollar
  8:13 13:1
  15:10
  18:2
  26:11,22
  40:13,14
  43:19
  44:13
  45:5,7
  50:22,24
  52:23

downward
  18:16,18

due 52:21

duly 5:2

duties
  9:17

E

earlier
  47:9

earliest
  17:18

east 8:6

educational
  11:24

employed
  9:10
  10:23,25
  11:12,20

enclosed
  42:17

end 9:19
  10:7

endorse
  35:8

endorsed
  35:12

entered
  33:6

Enterprises
  9:23

entire
  11:11
  23:13

environment
al 5:8
  6:15 7:24
  8:2 19:19
  33:24,25

EPA 43:5,
  11,15
  47:13
  51:3

Evanston
  14:4,5

20:14
22:20,24
23:1
27:25
33:18
44:19

exact
  40:13

EXAMINATION
  5:4

examined
  5:2

excuse
  20:22
  22:11
  34:8

exercising
  32:13

exhibit
  7:10,12,
  13 18:24
  19:11
  21:17
  22:3,16
  23:21
  28:17,19
  29:18
  30:3,12,
  16 41:19,
  21,23
  50:8,25

Exhibits
  19:2,5

expected
  43:22
  44:14

expects
  15:23

expended
  7:23
  12:7,14
  20:2

expenses
  17:16
  21:25
  22:6

explain
  25:1 45:6

explained
  49:9

extent
  38:14

eye 40:18

F

fact 16:1
  43:14,20
  44:16

familiar
  12:10
  13:16,25
  20:10
  21:21
  42:11,21
  43:11,13,
  19

February
  19:15
  20:17
  22:3,4
  24:6

Federal
  5:6

fight
  29:22

figure
  25:21,24
  37:14

figuring
  49:6

financial
  9:6 10:7

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
Index: find..insurers

**find** 25:22
36:5, 6
37:14, 18
49:13

**finish**
6:21
51:14

**firm** 16:6,
10

**follow-up**
46:3

**form** 20:21
22:9

**format**
36:1

**forward**
24:10, 20

**frequently**
40:20

**Friedrich**
16:11
19:17
32:4
33:15, 23,
24 47:25

**full** 35:18
36:21
37:2
38:21

**Fuller**
5:1, 11, 12
7:10, 13
12:4
18:24
19:4, 10
28:16
30:12, 15
38:18
41:19, 22
47:21
49:4 50:8

**fund** 44:8
45:20

**funds**
15:19
17:25
33:19
35:7, 10
39:13, 24
40:9, 20
44:24
46:5

**future**
44:8
46:22
51:23
52:3, 21

— G —

**generally**
42:4, 12

**give** 11:5
13:1
50:24

**giving**
6:19

**going-
forward**
24:2

**Gregory**
19:18

**ground** 7:7

**groundwater**
51:2

**group**
43:1, 3
44:11
48:10, 11
51:6, 20,
21 52:14,
15

**guess** 27:5
31:6
40:19
50:5

— H —

**half**
20:14, 15
22:1

**handed**
7:13
30:16
41:23

**handle**
27:23
48:9

**handled**
46:6 48:8

**handling**
27:14

**happen**
47:6, 8

**happened**
46:25

**hard** 6:20

**heard** 29:5

**held** 9:7

**HOFFMANN**
5:5 7:8
18:22
21:2
28:15
29:3, 9,
12, 19
30:2, 10,
15 31:1,
9, 14, 16,
21 32:18
36:25
41:18

47:17, 21
53:1, 4, 8,
15, 19

**Home** 19:18

— I —

**idea** 37:9

**identified**
17:14
20:12
30:17
44:19

**identify**
29:14
30:3, 7

**II** 8:4

**Illinois**
8:7 51:3

**imagine**
41:10

**imposed**
27:25

**includes**
43:3

**including**
8:13
48:4, 5

**Indian** 8:6

**indicating**
26:18
27:9

**information**
8:10, 18
49:19
50:14

**informed**
28:22

**instance**
35:11

39:15, 18
40:3

**instances**
38:19, 25

**instruct**
29:17
30:1, 8, 20

**insurance**
5:24 6:6,
14, 16
8:15, 16
10:6, 10
13:17
14:4, 7
19:20
21:19, 21
22:20

**insured**
5:22

**insurer**
35:15
38:8
39:20, 24
46:4, 16
47:3

**insurers**
7:25
12:9, 15,
19 13:5,
8, 11, 14,
19 14:15,
19 15:3,
11, 18, 21
16:1, 12,
13,
17:14, 21,
24 18:7
19:8, 23
20:12
22:24
23:9
24:10
25:9
26:4, 9,

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
Index: Interim..made

11,14,20
27:5,18
30:24
32:20
33:12
34:15
35:3,18,
20 36:11,
22 37:1
38:4,17,
19 39:1,
17 40:21
41:14
44:18
45:1,9,
22,24
49:8,17,
20,23
50:2
51:20,21
52:6,7,
14,17,22

**Interim**
42:20

**internally**
30:22

**inventory**
11:9,10

**investigati
on** 51:2

**invoice**
17:23
18:13,15
20:5
22:14
28:5,6
36:12
37:25
38:1,2,9,
21 39:3,
21 40:6
48:15,23

**invoiced**
48:13

**invoices**
8:25 9:3
12:17,21,
23,25
13:6,13
14:18,22
15:3,6,9,
12,16,22,
24 16:3,
5,6 17:9,
19 18:2,
13 20:8
21:3,7,8,
15,16
23:9
24:4,6
26:3
27:2,11,
19 28:3
31:7
33:6,9
35:19
37:3,23
40:6,25
41:3,6,
12,13
42:4

**involve**
10:16

**involved**
43:14
51:7

**involves**
43:13

**issue** 23:4
29:5
32:16

**issues**
10:6,10,
15 32:12

**item** 12:5
50:10

**items**
42:22

_____

**J**

**Janczewski**
20:21,23
22:8
28:20
29:7,10,
16,21
30:6,19
31:3,12
32:8
36:23
47:19
53:6,10,
14,21,22

**job** 9:15
10:2,15,
21 11:8

**Joe's**
11:21

**join** 51:20
52:18

**July** 15:9
21:11,14
41:1,2,11

**jumbled**
6:22

**June** 15:9
21:13

_____

**K**

**keeping**
6:18
38:16
49:24

**knowledge**
7:21 8:9,
17 23:2
31:9
38:15

39:23
50:5,11,
14,17
52:9,15

_____

**L**

**Lake** 8:3
9:2 12:9,
11,16
13:21
27:1
45:19,23
46:12

**Lakes** 8:5

**Land** 8:5

**Landfill**
8:5

**Landfills**
8:5

**law** 16:6

**lawsuit**
5:22 6:15

**LCC** 13:21

**LCCS** 13:22
14:9,
19:25
20:3,20
22:7
27:1,13,
20,22,23
28:4
32:21
33:20
40:21
47:15,23

**legal**
10:6,15
26:25
27:13
28:3

**length**
52:16

**letter**
18:21
19:12,13,
15 20:16
22:17,
41:25
42:16

**liability**
6:5 8:1
10:14
52:17

**limited**
26:25
27:19,21

**list** 21:14

**listed**
50:10

**litigation**
52:2

**locality**
23:24

**located**
8:3

**log** 17:25

**long** 6:4
9:7

**looked**
40:9

**lot** 51:2

**lower**
16:18
24:25
25:2

_____

**M**

**made** 15:2
17:20

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
Index: majors..originally

18:14
32:20,23
33:12,13
34:18
36:20,21
37:19
41:16,17
47:10,12

majors
11:25

make 13:4,
9 15:11
18:12
34:15
35:5
47:3,5
53:12

making
10:11
43:15

management
12:1

Manufacturi
ng 11:17

March 42:1

mark 7:9
18:23
28:16
41:18

marked
7:12 19:2
28:19
30:11
41:21,23

Marsh 8:6

match 38:6

matter
5:20,24
6:8 12:10
27:12
28:1,4
32:21

48:2,7,
49:25

matters
27:14,22

Mckinley
13:17,19
20:15
21:19,20,
22,25
22:5
27:25
33:18
39:6 40:3
44:19
45:8,25
46:4,15,
16

mechanism
30:23

Menards
11:4,6,8,
12,19

mentions
23:22
51:1

Michael
12:25
16:11,15,
16,19,
17:22,25
18:5,11,
14 19:17
22:18
24:3,11,
16,18,19,
25 25:4,6
26:15,19
27:10,14,
21 28:5,6
29:2 32:3
33:9,15,
23 34:3,
8,10,22
35:6,9,

13,21
36:13,18
37:4,6
38:15,16
39:4,12,
16,23
41:7
42:1,9,23
46:6
47:25
48:6,14,
25 49:20,
24

Midwest
11:17

mind 39:5
46:19

minute
19:5
41:24
53:2

minutes
21:5
47:18

misspoke
21:12

mistakenly
28:23
30:24

months
47:1

morning
8:21

Mt 13:17,
19 20:15
21:19,20,
22,25
22:5
27:25
33:18
39:6 40:3
44:19
45:8,25

46:4,15,
16

_____

N
_____

National
13:24,25
19:19,23
20:1,9,
13,17
33:19
44:20

necessarily
27:11

needed 7:6

normal
16:19
28:10

north 8:3

Northwest
9:22

notice
7:14,20
12:6 50:9

number
6:13,17
7:10,14,
22 8:10,
12 12:5
19:11
21:18
28:17
30:12,16
41:24
42:17
50:9

numbered
30:14

numbers
18:13,25
22:14
38:1

_____

O
_____

object
20:21
22:8
28:21,25
30:20
36:23

objection
31:2

obligation
47:11

occurred
23:19

off-the-
record
31:18

offer
23:22

Office
19:18

Officer
9:6

one-third
52:20

operations
12:1

opposed
24:11

order
34:10,21,
22,24
42:14,18
43:10,16,
23 44:1,7
47:11

ordering
53:18

originally

Case 2:10-cv-00843-RTR Filed 10/31/13 Page 23 of 28 Document 56

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
Index: outstanding..privilege

39:25

**outstanding**
15:12,24
20:19
23:8,14
36:12
37:2
38:21
39:2
40:25

**overpaid**
39:1,20
40:4

**oversee**
10:7

---

**P**

**paid** 7:24
12:8,14,
18 14:14,
19 15:18
16:12
20:5,18
21:4,9,16
22:15
24:19
26:9,12,
14,15
33:4,5
34:21,24
35:6,16
36:7 37:2
38:17
39:1,19,
24 40:9
41:5,7
44:17,25
45:22
49:8,9,
17,22
50:2
51:22,24
52:22

**panel**
16:2,3,
13,18
17:8,9,11
18:9,16
23:5,16,
20 24:10,
14,24
25:5,
26:7
27:3,24
28:7,9,14
38:22
49:14,15

**paragraph**
23:22,25
42:16

**part** 31:5
41:3
42:25
44:24
52:13

**participate
d** 43:10

**participati
ng** 52:6

**participati
on** 42:13

**parties**
32:15
43:5 48:1

**past** 51:22
52:4,24

**Paxton** 8:4

**pay** 13:5
15:3,23
17:22
23:23
24:2,6
33:19
34:10
38:19,24
39:6,11,

17 43:22
46:24
48:21
49:18

**payable**
9:3 33:7
34:16
41:5

**paying**
16:2,13,
14 18:8
20:1,10,
17 22:6
24:10,17
25:8
26:19
27:17

**payment**
15:12
27:10,17
31:7
35:18
36:21
41:15,17
43:15
47:3,10

**payments**
13:10
30:23
32:19
33:11,13
35:15
36:19
46:22
47:12

**payroll**
9:19

**percent**
20:13,14,
15 23:1
48:10,13,
16

**percentage**
20:18

45:10
51:23
52:20

**period**
14:18
15:6
23:19
34:13
52:16

**permit**
29:25

**person**
8:9,17

**personally**
22:12

**pertaining**
28:4 50:1

**perusing**
40:17

**Peters**
34:6

**pieces**
40:11

**plaintiff**
5:8

**plant** 5:23

**point** 7:5
15:13
18:7 25:5
33:16
47:2

**policies**
10:11,12

**portion**
20:6,10,
45:11,13,
14 46:20

**position**
9:5,8,13
10:23

**positive**
52:23

**possibly**
45:25
52:3

**postgraduat
e** 12:2

**potentially**
43:4

**Prange's**
11:21

**precise**
45:5

**prepare**
8:20

**present**
24:23

**pretty**
47:8

**prevailing**
23:23

**previously**
7:18
19:13
22:23
24:4,12,
16 30:18
31:22
49:5

**price**
10:13

**primarily**
14:12

**prior**
9:10,12
10:21
11:1,19
20:20
24:5 46:8

**privilege**

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
Index: privileged..remember

31:4

**privileged**
36:24

**Procedure**
5:7

**produced**
27:8
28:23
29:4
30:13,25
31:8,10
34:20

**product**
5:23
31:4,6

**programming**
11:15

**provide**
36:19

**provided**
24:3 40:7

**PRP** 43:1,
3,20 51:5

**PRPS** 43:9,
15 47:23

**purposes**
6:18

**pursuant**
43:20

**put** 35:4

---

**Q**

**quarter**
41:9,11,
14,15

**quarterly**
40:23

**question**
6:21,23,

24 7:2
14:20
21:1
27:6,16
31:19

**questions**
6:14,
29:18
32:6,10
53:5

---

**R**

**range** 11:5

**rate**
16:14,15,
19 18:4
24:11,15,
16,19
26:7 27:3
28:8,9,
11,
49:14,15

**rates**
16:2,3,
13,18
17:8,9,11
18:9,17
23:5,16,
20,23
24:3,10,
15,24,25
25:5,6,7
27:17,21,
24 28:7
38:22

**re-up**
10:12

**read** 31:19

**realize**
19:11
23:6

**reason**
23:13
34:2
46:8,9,10
49:16

**reasonable**
23:23

**recall**
19:25
21:9 22:4
23:16
40:11,12
41:1

**recalled**
40:2

**receive**
35:18
36:15,18
42:7
48:14

**received**
32:23
34:9 38:7
39:25
40:21
50:1

**receives**
35:1

**receiving**
12:18
37:8

**recent**
15:7,16
23:9
34:17

**recently**
25:13,15,
16 34:23

**record**
5:6,9
6:19,23
30:4,7,

10,17,21
31:17
32:9,22
33:3
35:14,17
36:1,7,9
38:16

**records**
9:3 10:4,
5 32:19
35:23,
49:25

**refer**
13:21
42:25

**references**
42:16

**referred**
20:9

**reflect**
30:11
49:12

**reflecting**
35:24

**reflects**
48:15,24

**regular**
18:4
24:15,19
28:8

**regularly**
36:9

**reimburse**
13:5
15:22
20:8

**reimbursed**
7:25
12:8,
13:15
14:14
18:3

23:10
26:4,12
39:19
45:21
52:25

**reimburseme
nt** 51:5

**reimbursing**
13:20
14:2,8
17:15,18
19:24
22:25
25:9
26:20
27:18

**relate**
5:21 6:6

**related**
32:20
48:11

**relating**
5:24
12:16
19:24
20:2 22:7
27:1,12,
19

**relation**
21:5

**rely** 35:21

**relying**
49:19

**remaining**
15:25

**remedial**
44:9 51:1

**remediation**
51:16

**remember**
40:8 46:9

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
Index: reminder..Supervisor

reminder
  6:11

repeat
  6:12,25

rephrase
  7:1 28:2

report
  49:11

reporter
  6:20 7:9
  18:23
  28:16
  30:11
  31:20
  41:22
  53:17,20

represent
  6:14

representin
g  16:9
  48:1

request
  13:4 15:2
  50:10

requested
  12:7
  44:12

requesting
  7:20 38:9

research
  17:7
  36:2,3

reserve
  53:9

resolved
  32:16

respond
  6:22 13:8

responsibil
ities  10:2

responsible
  43:5

restate
  35:16

retrieve
  49:22

review
  8:24
  53:11

reviewed
  8:22,25
  9:1

Ridge  8:6

rights
  32:14

Robert
  5:1,11

rough  11:5

roughly
  25:11
  26:22
  40:12

ruined
  5:23

rules  5:7
  6:12 7:7

running
  9:20

_____

S

_____

SAITH
  53:23

sales  10:7

seal  32:17

seek  51:19

seeking
  48:25
  50:20

51:17,25
52:8,11

seeks  8:14

send  10:19
  17:23,24
  18:1
  33:16,19
  46:11

sending
  39:12

sends
  28:5,6

series
  32:10

services
  5:8 6:16
  7:24
  26:25
  33:24
  34:1

settle
  51:21

settlement
  8:2

setup
  46:10

share
  20:18
  21:25
  22:6 23:1
  44:13,25
  48:16

shared
  48:11

sharing
  47:22
  52:5

shop  11:22

short
  45:25

46:4,5,18
47:4 53:3

showing
  22:13

signature
  53:9,16,
  25

signed
  19:17

sir  5:10

site  8:3
  12:10,11,
  16 13:22
  27:2
  45:20,
  50:23
  51:5,7,8
  52:4

slips
  37:20,22

Smith
  19:16
  21:19
  22:18

sort  8:23
  33:2
  40:14

south  8:4

specific
  42:4

specificall
y  28:4
  32:6
  42:12

speculate
  25:19
  50:24

speculation
  52:19

Sports

11:21

staff
  10:18

started
  17:8,11,
  15,18
  18:8,11
  51:1

state  5:9
  14:20
  20:25
  30:21

stopped
  18:8

Store
  11:18

stores
  11:10

Street  8:4

stuff
  11:15

subject
  12:6

submitted
  26:4
  35:19
  38:24
  41:14

subsidiary
  9:22

subtract
  26:2

summary
  36:19
  37:6

sums  7:23
  12:7,14

Supervisor
  19:18

Case 2:10-cv-00843-RTR  Filed 10/31/13  Page 26 of 28  Document 112

ROBERT THOMAS FULLER
WRR ENVIRONMENTAL vs. ADMIRAL INSURANCE

October 03, 2013
Index: surety..WRR

surety
  44:3,5,8
  47:11

switching
  9:21

sworn  5:2

system
  9:20 33:7

**T**

Table
  42:21

talk  31:13

talking
  16:5 33:8
  51:15,16

tally  33:3

telling
  37:15

terms
  42:12
  50:22

testified
  5:3

testify
  29:1

thing  26:6

things
  6:22 34:7

Thomas
  5:1,11

thought
  21:10

thousand
  22:10

time  5:17
  6:2,3,4,
  20 11:6,

11 14:18
15:6
20:16
23:18
25:5,11
29:5
33:16
34:12
38:23
47:6,9
50:25
51:9
52:16

timely
  46:13

times  5:15
  6:11

title  9:15

told  19:22
  44:12

topic  50:6

total  8:13
  12:18
  26:10
  36:11
  38:7
  46:12,21
  48:19,24

totalled
  38:8

totally
  15:14
  18:19
  40:10

track
  30:23

tracking
  31:7

transcript
  53:11,18

turn  7:18

twenty
  21:11

type  5:20

typically
  42:7

**U**

understand
  6:24
  27:5,7
  41:25
  43:7

understood
  7:2 23:6

Union
  13:24,25
  19:19,23
  20:1,9,
  14,17
  33:19
  44:20

unpaid
  12:20
  13:13

unreimburse
d  12:21,22

Updated
  42:20

**V**

versus
  6:16
  49:8,17

**W**

wait  6:20

waive  53:9

waived
  53:25

waiving
  53:16

wanted
  17:4
  25:21,24
  37:14

west  8:6

whichever
  46:4,16

whomever
  35:6

words
  34:17

work  9:21
  12:2 28:3
  31:4,6
  51:4

worked
  9:19

working
  11:15
  22:11
  42:23

write
  33:21
  36:7

written
  27:9
  32:22
  33:14,22
  34:3,4
  36:1

wrong
  40:18

wrote
  45:19

WRR  5:8
  6:15 7:23

8:14 9:2,
5,11,
10:22,23
12:8,14
13:4,20
14:2,8
15:18,21,
23 16:16,
20,22
17:15,23
18:1
19:24
20:2
22:25
24:17
25:8
26:12,14,
18 27:8,
15,17
28:6
30:13
31:10
32:12,13,
19 33:2,
13,17,21,
24,25
34:4,7,
11,16,18,
21,22,24,
25 35:1,
9,14,16,
23 36:7,8
37:9
39:19,25
42:14,25
43:3,9,
14,19,22
44:11,13,
17 45:19
47:12,22
48:1,4,5,
6,12,14,
20,23
49:2,8,
12,17,20
50:4,17,
20 51:13,

        17,19,25
        52:8,11

**WRR'S**
        12:15
        16:6
        33:19
        44:25
        48:15
        49:25
        50:11

**WRR001618**
        30:14

**WRR001625**
        30:14

**WWR'S**
        30:22

───────────
            **Y**
───────────

**year**  5:19
        25:12,18
        41:1,
        47:9

**years**
        9:12,25
        11:14
        25:13,20

**yesterday**
        29:8,11

───────────
            **Z**
───────────

**ZIMMERMAN**
        31:5,15

ESQUIRE
800.211.DEPO (3376)
EsquireSolutions.com